# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

JOHN LAVANCHY,

    Plaintiff,

v.      Case No. 2:21-CV-04238-MDH

ELIZABETH ZIEGLER, et al.,

    Defendants.

## ORDER

Before the Court is Plaintiff John LaVanchy's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2). On January 24, 2022, the Court held a hearing regarding the pending motion. The matter is ripe for review. For the reasons set forth herein, Plaintiff's Motion for a temporary restraining order is **DENIED**. The motion for preliminary injunction is taken with the Court.

## BACKGROUND

Plaintiff seeks a temporary restraining order and preliminary injunction which orders Defendants to cease enforcement of MO. CONST. art. III, § 2(a) (the "Lobbying Ban"):

> After December 6, 2018, no person serving as a member of or employed by the general assembly shall act or serve as a paid lobbyist, register as a paid lobbyist, or solicit prospective employers or clients to represent as a paid lobbyist during the time of such service until the expiration of two calendar years after the conclusion of the session of the general assembly in which the member or employee last served and where such service was after December 6, 2018.

Plaintiff argues that the Lobbying Ban deprives him of his First Amendment freedom of speech and right to petition. Defendants are the Executive Director and Commissioners of the Missouri Ethics Commission (collectively, "MEC").

In 2018, the Missouri Constitution was amended by initiative petition to enact Amendment 1, which contained revisions to the state's ethics and campaign finance laws. Amendment 1 included the Lobbying Ban.

Plaintiff has served as a Legislative Assistant to Missouri State Representatives Shane Roden and Andrew McDaniel since December 2017 and January 2014, respectively. In this capacity, Plaintiff testified that his duties include performing research for the representatives, scheduling meeting for the representatives, including with special interests and lobbyists, and having some level of control or connection to who has access—and how much access—to the representatives. Plaintiff also occasionally attends committee meetings in place of the representatives. Because he is an employee of the General Assembly, he is subject to the Lobbying Ban. Roden and McDaniel will leave office in January 2023 due to term limits, and LaVanchy's employment prospects "thereafter are unclear." (Doc. 2 at 3). He argues that the Lobbying Ban is preventing him from finding suitable employment elsewhere. "Few private sector employers who value his skills and experience will consider him for employment because he is not allowed to speak to the government due to the Lobbying Ban…he is wary of even soliciting private-sector employment…" *Id*. However, Plaintiff testified that he has not applied to any employers.

Plaintiff argues that the Lobbying Ban is an unconstitutional burden on his right to freedom of speech and right to petition. He admits that the Lobbying Ban only prohibits lobbying that is *compensated* and that he may therefore engage in any lobbying activities so long as he is not paid pursuant to the requirements of the Lobbying Ban. However, Plaintiff argues that "[d]enying compensation for the exercise of a constitutional right is a burden on that right." (Doc. 15 at 1). He further argues that the Lobbying Ban is overbroad as the phrase "no person serving as a member of *or employed by the general assembly* shall act or serve as a paid lobbyist," may capture

employees—such as janitors purportedly employed by the general assembly— that the Government has no legitimate interest in prohibiting lobbying activity of.

## STANDARD

Courts in the Eighth Circuit consider four factors when deciding whether to grant a preliminary injunction: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of movant's harm and the injury an injunction could inflict on other parties; and (4) the public interest. *Heartland Academy Community Church v. Waddle*, 335 F.3d 684 (8th Cir. 2003) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981))*; see also Associated Producers Co. v. City of Independence, Mo.*, 648 F. Supp. 1255 (W.D. Mo. 1986). These same factors apply to the determination of whether to grant a temporary restraining order. *GP3 II, LLC v. Bank of the West*, 467 F. Supp. 3d 765, 769 (W.D. Mo. 2020).

## DISCUSSION

1. **Plaintiff does not have a likelihood of success on the merits**

"Since *Dataphase*, the Eighth Circuit has generally held that the likelihood of success on the merits is the most significant factor." *Champion Salt, LLC v. arthofer*, No. 4:21-cv-00755-JAR, 2021 WL 4059727, at *6 (E.D. Mo. Sept. 7, 2021) (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013)). In a challenge to a federal statute, state statute, or other "government action based on presumptively reasoned democratic processes," 4 the movant must show "a substantial likelihood of success on the merits[.]" *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–32 (8th Cir. 2008) (en banc) (internal citations and quotations omitted). This burden requires the movant to demonstrate more than just a "fair chance" of success on the merits. *Id.* This more rigorous standard "reflects the idea that governmental policies implemented

3

through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Id* (citations omitted).

Under 42 U.S.C. § 1983, a plaintiff may hold state actors accountable for "deprivation of any rights, privileges, or immunities secured by the Constitution." Plaintiff argues that MEC deprives Plaintiff of his First Amendment freedom of speech and right to petition by enforcing the Lobbying Ban. "Congress shall make no law… abridging the freedom of speech" or the right of the people "to petition the Government for a redress of grievances." U.S. Const. amend. I. The First Amendment has been made applicable to the State of Missouri by operation of the Fourteenth Amendment. *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940). Lobbying the government is protected under the First Amendment. *E.g., F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990).

In this case, Plaintiff conflates his right to speak and petition with his desire to receive compensation for doing so. Plaintiff admits that no portion of Article III, § 2(a) affects his right to say anything he wants to any member of the Missouri General Assembly on behalf of any client or special interest group. The restriction simply imposes a two-year waiting period for which Plaintiff may not be paid for attempts to influence government actions.

Plaintiff relies heavily on *Citizens United* for the proposition that "Government may not indirectly restrict speech by denying access to advisors or other assistance, because 'effective public communication requires the speaker to make use of the services of others.'" (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) (quoting *McConnell v. F.E.C.*, 540 U.S. 93, 251 (2003) (opinion of Scalia, J.)) However, Plaintiff's argument that speech is burdened by the Lobbying Ban because the compensation prohibition restricts "access" for speakers has

4

little bearing on this case. Here, the speaker allegedly being burdened is the payor, or the entity who wishes to pay a person subject to the lobbying restriction to lobby for it. Plaintiff's speech is not directly burdened.

Moreover, the definition of "legislative lobbyist" in Mo. Rev. Stat. 105.470.5 further narrows the prohibitions of the Lobbying Ban. Under § 105.470.5:

> …A "legislative lobbyist" **shall also not include any member of the general assembly, an elected state official, or any other person** solely due to such person's participation in any of the following activities:
> a. Responding to any request for information made by any public official or employee of the legislative branch of government;
> b. Preparing or publication of an editorial, a newsletter, newspaper, magazine, radio or television broadcast, or similar news medium, whether print or electronic;
> c. Acting within the scope of employment of the legislative branch of government when acting with respect to the general assembly or any member thereof;
> d. Testifying as a witness before the general assembly or any committee thereof;

Mo. Rev. Stat. § 105.470.5 (emphasis added). This means that the Lobbying Ban does not prohibit him from engaging in the activities above for compensation. The activities the Lobbying Ban directly prohibits include activities that implicate corruption or quid pro quo concerns the most—for example, Plaintiff is prohibited from being compensated for one-on-one lobbying-related meetings with elected officials.

To the limited extent Plaintiff's speech may be burdened, the Court finds that the Lobbying Ban is likely constitutional regardless of the level of scrutiny the Court applies. Plaintiff contends that strict scrutiny must be applied, while Defendants argue that the Lobbying Ban is content-neutral and is subject to exacting scrutiny. At this time, the Court declines to decide which scrutiny analysis the Lobbying Ban is subject to, because the Court concludes that the restriction likely meets the highest standard of strict scrutiny in any event.

5

Case 2:21-cv-04238-MDH    Document 19    Filed 01/27/22    Page 5 of 10

Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171, (2015) (citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 131 S.Ct. 2806, 2817 (2011) (internal quotations omitted).

The governmental interest in preventing quid pro quo corruption, including the appearance of corruption, is compelling. *Cf. Minn. Citizens Concerned for Life, Inc. v. Kelley*, 427 F.3d 1106, 1111 (8th Cir. 2005). Indeed, in *Calzone,* the Eighth Circuit acknowledged Missouri's interest in transparency relating to corruption increases when money is changing hands. *See Calzone v. Summers*, 942 F.3d 415, 425 (8th Cir. 2019) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 354 (1995)). Other states have recognized this interest as well. Missouri is far from alone in regulating the revolving door, nearly 40 states have restrictions on lobbying after government service.

While the *Calzone* court did find unconstitutional a provision requiring registration of certain unpaid lobbying activity, the court was clear to acknowledge the public interest is different and greater when the lobbying activity is paid. *Id*. at 418, 25. In *Brinkman v. Budish*, a court which has reviewed a challenge to a similar law, the court found a revolving door restriction unconstitutional on first amendment grounds when the restriction included **unpaid** lobbying, but that case is significantly different than what we have here. 692 F. Supp. 2d 855, 859 (S.D. Ohio 2010). In *Brinkman*, the Court noted the paid nature of lobbying was key to a governmental interest in regulating quid pro quo corruption, requiring the exchange of money, which was *not* present in Ohio's restriction. *Id.* at 862-63.

The MEC has a substantial interest in regulation of quid pro quo corruption. This is particularly true when former legislators or their employees, who are less than two years removed

from positions of great influence, are paid by interested parties to lobby their former colleagues in government. This substantial interest was front and center in the initiative process adopting the restrictions, with a purpose to "...regulate the conduct of present and former legislators and legislative-branch employees, based on their service in the legislative branch; it does not purport to regulate the conduct of 'private employees' generally." *Ritter v. Ashcroft*, 561 S.W.3d 74, 89 (Mo. Ct. App. 2018). In *Brinkman*, the court found that there is a compelling governmental interest in issues of quid pro quo corruption, when there is an exchange of money, which the Lobbying Ban here requires.

Furthermore, the Lobbying Ban is likely narrowly tailored with respect to Plaintiff. the revolving door restriction in Article III, § 2(a) is limited and targeted at the sufficiently important governmental interest in several ways. First, the regulations apply for only two years from a covered individual leaving service with the legislature, equal to one election cycle for legislative offices. This is the time where a recent legislative branch member or employee has the most intimate knowledge of and connections to the institution. Second, the restriction applies only to paid advocacy, placing no limits on unpaid advocacy. This focuses the restrictions on quid pro quo corruption, driven by the exchange of money, and leaves untouched lobbying untainted by money. *See Calzone*, 942 F.3d at 425 (internal citations omitted). Third, it applies only to advocacy which meets the definition of lobbying in Mo. Rev. Stat. § 105.470, leaving individuals free to be paid for activity such as private speeches or other advocacy not defined as lobbying.

As noted, ample alternative channels for communication of the information remain open, showing the narrow focus on only activity narrowly tailored to the interest here. *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Plaintiff is not prohibited from speaking in any manner, so long as he is not paid pursuant to the requirements of the Lobbying Ban. While Plaintiff

7

raises an interesting argument regarding whether the Lobbying Ban is narrowly tailored with respect to certain "employees" of the General Assembly that may not implicate quid pro quo or corruption concerns, the Court believes that Plaintiff is not a member of a class that could be harmed by the alleged overbreadth.

Plaintiff has demonstrated a minimal burden on his right to exercise free speech and right to petition. Furthermore, at this stage in litigation, the Lobbying Ban appears constitutional and that it would meet the highest level of scrutiny. Therefore, Plaintiff has not demonstrated that he is likely to succeed on the merits.

2. **Plaintiff is not threatened with irreparable harm**

To demonstrate a sufficient threat of irreparable harm, the moving party must show that there is no adequate remedy ay law, generally because the movant's injuries cannot be fully compensated through an award of damages. *Ronnoco Coffee, LLC v. Castagna*, 2021 WL 842599, at *7 (E.D. Mo. Mar. 5, 2021) (citing *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

The Lobbying Ban does not prohibit Plaintiff from speaking or petitioning on any subject. Rather, the restriction is related solely to his ability to be paid for certain lobbying activity. Therefore, there appears to be no threat of irreparable harm to Plaintiff's right freedom of speech. Otherwise, Plaintiff has demonstrated no threat of harm. Plaintiff merely speculates that the Lobbying Ban would preclude him from certain jobs, but he has not applied to any jobs or otherwise attempted to gain new employment.

3. **The balance of interests does not favor injunctive relief**

The balance of equities analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and other interested parties, including the public. *Dataphase*,

640 F.2d at 113. In doing so, courts consider the threat to each of the parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and interested third parties, and whether the defendant has already taken remedial action. *Noodles Development, LP v. Ninth Street Partners*, LLP, 507 F. Supp. 2d 1030, 1038-39 (E.D. Mo. 2007).

On these two factors, a court gives great weight to the declared public interest through democratic processes, which already provide a framework for balancing the harms of the action. *See id.* The *In Re Sac & Fox Tribe* court held Congress is entitled to "great weight to the fact [it] had already declared the public interest" and balanced the harms in creating the framework. *Id.* Likewise, in the present case, Article III, § 2(a) was the product of a robust democratic process: a constitutional amendment adopted by the citizens.

Issuing injunctive relief against a state constitutional amendment would cause per se irreparable harm against the State and the MEC. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also 1-800-411- Pain Referral Service, LLC v. Otto*, 744 F.3d 1045, 1053-54 (8th Cir. 2014) (holding that in the context of a preliminary injunction, courts apply "a more rigorous threshold showing than th[e] ordinary preliminary injunction test" when the injunction would impede state law); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Here, there is a strong public interest in avoiding quid pro quo between legislators and outside entities as well as an interest in avoiding the appearance of such. As previously discussed, the restriction places no limits on Plaintiff's right to speak or petition; it only prevents him from

9

Case 2:21-cv-04238-MDH   Document 19   Filed 01/27/22   Page 9 of 10

being paid to do so. As such, the public interest in preventing quid pro quo corruption or the appearance thereof outweighs Plaintiff's purported harm in not being permitted to be paid for speech and petitioning.

### 4. The public interest does not favor injunctive relief

An injunction is in the public interests if the public interest would be served by injunctive relief. *See Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 613 F. Supp. 2d 1140, 1145 (W.D. Mo. 2009). Plaintiff's only argument regarding this factor is that "[t]he public has a strong interest in upholding the U.S. Constitution, and it 'has no interest in enforcing an unconstitutional ordinance.'" (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

On the other hand, as noted, the public interest in enforcing a citizen-enacted constitutional amendment is substantial. Furthermore, there is a great public interest in deterring corruption within the State's legislative body as well as the appearance of corruption. Accordingly, the public interest does not support Plaintiff's request to enjoin the Lobbying Ban.

### CONCLUSION

Wherefore, for the reasons set forth herein, Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**
DATED: January 27, 2022

                                       ___/s/ Douglas Harpool_____
                                       **DOUGLAS HARPOOL**
                                       **UNITED STATES DISTRICT JUDGE**